BUNNEL and AMELIA, his wife, *against* TAINTOR's administrator.

Where the plaintiff declares on a special agreement, he must prove that agreement as he has stated it in his declaration.

Therefore, where in an action by husband and wife, the plaintiffs declared upon a promise made *to them jointly;* and the proof was of a promise made *to her before marriage*, the variance was held to be fatal.

So, where the plaintiffs declared upon an agreement of the defendant *to pay them* 1000 *dollars, in a reasonable time;* and the proof was of an agreement, that *if the plaintiffs should reconvey to the defendant certain land, the defendant would pay them the purchase money*, which was 1100 dollars, *or so much thereof as the defendant should have received*, the variance was held to be fatal.

*Qu.* Whether *indebitatus assumpsit* will lie for land sold, on the basis of implied contract.

*Qu.* Whether husband and wife can maintain *indebitatus assumpsit*, for a valuable consideration proceeding from the wife only.

This was an action of *assumpsit*, in two counts. The first was a general count for money had and received of *Amelia*, while sole and unmarried, for her use. The second was special,

Bunnel
*v.*
Taintor.

stating, That on the 1st of *May*, 1820, said *Taintor* was justly indebted to the plaintiffs, in the sum of 1000 dollars, for a certain tract of land in *Branford*, containing about eight acres, [describing it] which was long since sold and conveyed to said *Taintor*, by the plaintiffs, and was land owned and possessed, by said *Amelia*, while sole and unmarried ; and said *Taintor*, being so indebted, assumed upon himself, and to the plaintiffs faithfully promised, in consideration of such indebtedness, to pay to them said sum of 1000 dollars, in a reasonable time.

*Non assumpsit* was pleaded to both counts ; and the cause was tried at *New-Haven*, *August* term, 1823, before *Chapman*, J.

In support of the issue on the first count, the plaintiffs offered certain evidence, which the judge rejected. Under the second count, they then offered parol evidence to prove, that in 1811, *Taintor* conveyed to *Amelia Foot*, then a feme sole, the land described in the declaration, for the consideration of 1100 dollars ; and that he then agreed with her, to repay her the purchase money, or so much thereof as he might have received, whenever she should reconvey the land ; that in pursuance of this agreement, in *May*, 1820, after the intermarriage of *Amelia* with *Bunnel*, the plaintiffs, by a release deed, reconveyed the land to *Taintor*, who accepted of such deed, and agreed to pay the plaintiffs the value of the land, at that time, or so much of the purchase money as amounted to it, or the sum of 700 dollars, which the plaintiffs claimed to have proved, that *Taintor* admitted he had received. The plaintiffs also offered parol evidence, to prove, that after they had given *Taintor* such deed, he took possession of the land, and applied the rents and crops to his own use ; and that he, at several times, admitted, that he owed the plaintiffs for the land, and had agreed to pay them for it. The plaintiffs also produced the deeds referred to. To the admission of this evidence the defendant objected. The judge admitted it under the second count, *viz.* the two deeds, the contract made at the execution of the first deed, and the admissions made by *Taintor*. In his charge to the jury, the judge said : " This contract to repay the purchase money, on receiving a conveyance of the land, was, when made, within the statute of frauds and perjuries ; but, by receiving a deed afterwards, it was taken out of that statute. It is opposed to no rule of the common law. To support the second count, the plaintiffs must prove an express agreement, made either with the wife, or husband and wife, to pay to both."

The jury found a verdict for the defendant, on the first count, and for the plaintiffs, on the second count. The defendant moved for a new trial, on the ground that the evidence adduced by the plaintiffs, was improperly received.

*Daggett*, in support of the motion, contended, that the evidence received by the judge, under the second count, was inadmissible.

1. Because it was within the statute of frauds and perjuries. That it was originally within the statute, is not denied ; but the claim is, that it has been taken out of the statute, by part performance ; and the part performance relied upon, is, the execution by the plaintiffs, and the reception by *Taintor*, of the deed of *May*, 1820. To entitle a party to take the case out of the statute, on the ground of part performance, he must shew acts, which are not merely evidence of some agreement, but which unequivocally and satisfactorily prove the particular agreement in question. The *terms* of the agreement must distinctly appear, or be made out to the satisfaction of the court. *Phillips* v. *Thompson* & al. 1 *Johns. Chan. Rep.* 131. 149. *Parkhurst* & al. v. *Van Cortlandt*, 1 *Johns. Chan. Rep* 273. 284, 5. But does the release deed given by the plaintiffs, prove the agreement stated in the second count ? It does not appear that this act was done in part fulfilment of, or in reference to, any agreement ; much less does it shew what the agreement was.

2. Because it was to prove a promise made more than three years since, *viz.* in 1811, and therefore barred by the statute of limitations. *Bunnel* v. *Taintor's* admr. 4 *Conn. Rep.* 568.

3. Because it went to prove a promise made to *Amelia Foot*, before marriage. The second count states a promise made to *Jesse Bunnel* and *Amelia Bunnel*, his wife. The jury cannot find a contract with husband and wife, on proof of a contract with the wife, when sole.

4. Because it was to prove a different promise from that set up in the second count ; and that in two respects. First, it tended to prove a promise to *Amelia Foot* only, and not to the plaintiffs. Secondly, it tended to prove a promise with two alternatives, *viz.* to pay the plaintiffs the then value of the land, *or* so much of the purchase money as amounted to it, *or* 700 dollars. The promise stated in the second count was precise and specific, *viz.* to pay the sum of 1000 dollars.

5. The *charge* shews, that the evidence in question ought

*New-Haven,*
June,
1824.

*Bunnel*
*v.*
*Taintor.*

not to have been received; first, because the second count cannot be supported, by proof of a promise to *Amelia Foot ;* and secondly, because it says an express promise must be proved ; and, certainly, that must be the promise laid in the declaration.

*Staples* and *R. I. Ingersoll,* contra, contended, 1. That the case was not within the statute of frauds and perjuries, because there had been a part execution of the contract. After shewing that a contract has been performed on one part, you may go into parol evidence to prove what that contract was. *Cone* v. *Tracy,* 1 *Root* 479. *Wells* v. *Deming,* 2 *Root* 149. *Chapman* v. *Allen, Kirby* 399.

2. That the agreement on which the plaintiffs sought to recover, was made in 1820, within three years from the commencement of the action. The plaintiffs have resorted to what took place in 1811, only to shew what led to that agreement.

3. That the plaintiffs were not bound to prove an express promise, because the wife's land was the meritorious cause or consideration, and her interest is made to appear expressly on the declaration. 1 *Chitt. Plead.* 19. *Lewis* v. *Martin,* 1 *Day* 263. The declaration is conformable to this idea. It shews the indebtedness of *Taintor* to *Amelia,* while sole and unmarried, and then avers, that " said *Taintor,* being so indebted, assumed upon himself, and to the *plaintiffs* faithfully promised," &c. There is, then, no ground for the objection, that the land was sold to *Amelia Foot,* and not to the plaintiffs.

4. That if an express promise was necessary, the evidence conduced to prove an express promise ; and the objection applies more to the *weight* of the evidence, upon which the jury have passed, than to its admissibility. The consideration money, which, by virtue of a special agreement, was to be paid for land, may be recovered under a general count for land sold and conveyed. *Bowen* v. *Bell,* 20 *Johns. Rep.* 210. 212. *Brown* & ux. v. *Clark,* cited 1 *Root,* 233. 1 *Swift's Dig.* 415. In such case, the declaration must, of course, be supported, by proof of an express contract. Our action of book debt is only *indebitatus assumpsit* for goods sold and services rendered. But in this action, the articles charged are subject to a special agreement as to price, mode of payment, time of payment, &c.

New-Haven, June, 1824.

Bunnel
v.
Taintor.

HOSMER, Ch. J. On the first count in the plaintiffs' declaration, the verdict was for the defendant, the person who moved for a new trial; and, as relative to this part of the case he has nothing of which to complain, it must be laid out of consideration

The action below, on the second count, was maintained on the ground of express contract. The motion, in its whole structure; the objection made to the testimony; and the charge of the judge on this point; incontrovertibly establish the fact. Hence, it is entirely unnecessary to express an opinion on the question, whether *indebitatus assumpsit* for the consideration of land sold, on the basis of *implied contract,* is sustainable. On this subject I entertain no doubt; nor on another connected with it; and that is, whether the plaintiffs can maintain this action, in their joint right, for a valuable consideration proceeding from the wife only. On both questions I waive the expression of an opinion, and confine myself to the enquiries made below, regarding the express contract only.

The foundation of the defendant's motion, is, a supposed variance between the plaintiff's allegations and the proof. It is said, that the evidence of an *assumpsit,* if it were sufficient, was not of a contract to pay a sum of money to the plaintiffs, but to pay *Amelia,* one of the plaintiffs, while sole and unmarried; and besides, that there is a variance between the terms of the contract as alleged and as proved.

It is an undisputed principle, that where the plaintiff declares on a special agreement, he must prove the contract stated, as in his declaration it is expressly averred.

The action is not brought on an agreement made with *Amelia Bunnel,* but on a promise made to the plaintiffs jointly. The two deeds adduced in evidence evinced nothing on the matter in question; but the judge admitted testimony to prove, that in the year 1811, when the land was conveyed, by *Taintor,* to the said *Amelia,* he promised, whenever she should reconvey the premises, to repay her the purchase money, or so much thereof as he should have received. This, with the admissions of *Taintor,* to which I shall presently attend, is the testimony, on which the plaintiffs relied, to sustain their declaration. This evidence did not bear on the plaintiffs' allegations. The averment is of an agreement made with the plaintiffs jointly; and the proof, of a contract made with *Amelia,* when she was a *feme sole.*

Then, as to the terms of the agreement; the plaintiffs allege,

New-Haven,
June,
1824.

Bunnel
v.
Taintor.

that the defendant's intestate promised to pay them a thousand dollars, in a reasonable time; and the evidence shows a contract, on the part of *Taintor*, if *Amelia should reconvey the premises*, to pay the purchase money, *viz. eleven hundred dollars*, or so much thereof as should have been received by him. The variance is palpable and fatal.

The proof of *Taintor's* admissions, that he owed the plaintiffs for the premises, and had agreed to pay them, is of no avail. The testimony, for aught I perceive, was unobjectionable; but the reception of proper testimony, does not legalize the reception of that which was inadmissible.

PETERS, BRAINARD and BRISTOL, Js. were of the same opinion.

New trial to be granted.